# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JERRY FRANCIS VAIL,** | : | **Civil No.  4:24-CV-1873** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **LELAND DUDEK,** | : | |
| **Acting Commissioner of Social Security**[1] | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I.    Introduction

Administrative Law Judges (ALJs) make disability determinations using a five-step sequential analysis which first establishes a residual functional capacity (RFC) for a claimant and then determines whether an individual with the claimant's same age, education, and RFC could perform either their past work or any work that exists in significant numbers in the national economy. ALJs use a number of tools and experts to aid in this determination, including vocational experts (VEs) whose

---

[1]Leland Dudek became the Acting Commissioner of Social Security on February 16, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek should be substituted for the previously named defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

testimony often informs and supports the decision of the ALJ as to whether any jobs exist which the claimant could perform. Indeed, "vocational expert testimony may provide substantial evidence to support an ALJ's finding at Step 5." Evans v. Kijakazi, No. 1:21-CV-00554, 2023 WL 2761125, at *8 (M.D. Pa. Apr. 3, 2023) (citing Zirnsak v. Colvin, 777 F.3d 607, 616 (3d Cir. 2014) ("The Commissioner can also rely on testimony from a VE to meet its step-five evidentiary burden")). But it is also axiomatic that an ALJ must address and resolve any material ambiguities and inconsistencies between vocational expert testimony, the Dictionary of Occupational Titles (DOT), the reference work upon which the expert relies upon when rendering an opinion, and the ALJ's decision, or remand may be appropriate. See Boone v. Barnhart, 353 F.3d 203, 209 (3d Cir. 2003); Smith v. Astrue, 961 F. Supp. 2d 620, 658 (D. Del. 2013); Williams v. Barnhart, 424 F. Supp. 2d 796, 802 (E.D. Pa. 2006).

So it is here. The plaintiff, Jerry Vail, applied for disability benefits, citing a number of emotional and physical impairments, including the partial amputation of his left thumb, fore finger and middle finger in a childhood explosives accident. At the disability hearing conducted in this case, the ALJ asked the vocational expert if there were jobs that a person with Vail's impairments could perform in the national economy that entailed no more than occasional left nondominant hand fingering and frequent left nondominant handling. (Tr. 58). The Vocational Expert's response was

2

initially unequivocal: The VE stated that there were no jobs that a person with Vail's impairments could perform, explaining that "the reason for that is because of the occasional fingering with the nondominant left upper extremity." (Tr. 59). Thus, the VE's testimony initially appeared to deem this limitation on fingering to be work preclusive for a person who experienced Vail's constellation of impairments.

What followed was confusion. Having declared, based upon these fingering limitations, that a person with Vail's impairments could not perform any work, the VE then testified that if an individual could use both hands frequently to handle materials there were a few jobs that individual could perform, including mail sorter and office helper. (Id.)  Neither the Vocational Expert, nor the ALJ, satisfactorily explained this inconsistency between the VE's testimony that fingering limitations were work preclusive and the statement that jobs existed which a person with bilateral handling ability could perform. Instead, they engaged in a brief and enigmatic colloquy which seemed to conflate fingering and handling.

Based upon this ambiguous exchange, the ALJ crafted an RFC for Vail which stated that he "is limited to frequent handling with the left nondominant hand, and occasional left nondominant fingering, with no limitations to the right dominant hand for handling or fingering." (Tr. 28). Thus, the ALJ's RFC seemingly incorporated what the VE testified would be a work preclusive fingering limitation.

3

Moreover, although the VE testified that the fingering limitations on Vail's nondominant hand would preclude work, two of the occupations identified by the VE and cited by the ALJ as work Vail could perform—mail sorter and office helper—called for frequent fingering, something that Vail could not do with his left hand due to the multiple digit amputations he suffered.

In our view, the ALJ's failure to address these ambiguities and inconsistencies results in a decision which cannot be sustained when viewed pragmatically in light of economic realities. Accordingly, for the reasons set forth below, we will remand this case for further consideration by the Commissioner.

## II.     <u>Statement of Facts and of the Case</u>

On November 29, 2021, Vail filed an application for disability insurance benefits pursuant to Title II of the Social Security Act, alleging disability beginning June 1, 2021. (Tr. 18). Vail alleged that he was disabled due to the combined effects of a cascading array of physical and emotional impairments, including status post remote left hand first to third digit amputations; post-traumatic stress disorder (PTSD); social anxiety disorder; anxiety disorder; depressive disorder; and a mood disorder. (Tr. 21). Vail was born on July 10, 1994, and was twenty-seven years old on his date last insured, which is defined as a younger individual under the Social Security guidelines. (Tr. 35). He had a high school education. (<u>Id.</u>)

4

With respect to Vail's physical limitations, the plaintiff reported that he suffered the amputation of three digits on his left hand during a childhood explosives accident when a quarter stick of dynamite that he was holding ignited. (Tr. 48). As a result, he suffered " the amputation of the left distal thumb, 2nd, and 3rd digits." (Tr. 23). Vail reported that she experienced a poor grip, numbness, limpness and periodic pain in his left hand due to these multiple amputations, (Tr. 55-57), although a consultative examiner reached somewhat more benign findings while confirming that Vail had lost three digits on his left hand. (Tr. 322-39).

On May 2, 2023, an ALJ conducted a hearing in Vail's case. (Tr. 41-63). During this hearing Vail and a Vocational Expert testified. (Id.) The Vocational Expert's testimony, which was designed to provide a logical bridge between Vail's impairments and his ability to work, was riddled with inconsistencies and ambiguities.

At the outset, the ALJ posed a hypothetical to the Vocational Exert which asked the VE to:

> Assume if you will we are dealing with an individual of the same age, education, and past work experience as the Claimant. Assume further that . . . [t]here should be no more than occasional left nondominant fingering and frequent left nondominant handling [along with limitation to unskilled work entailing simple and repetitive tasks in a low stress environment with few workplace changes and no interaction with the public.]

(Tr. 58-59).[2]

Given these assumptions, the ALJ asked whether a person with these limitations could perform work that existed in the national economy. (Tr. 59). The Vocational Expert's initial response was unequivocal: The VE stated that there were no jobs that a person with this combination of impairments could perform, explaining that "the reason for that is because of the occasional fingering with the nondominant left upper extremity." (Tr. 59).

Having apparently testified that, for persons who suffered from impairments like Vail's, a limitation to occasional left hand fingering was work preclusive, the VE then provided additional testimony which only compounded the confusion and ambiguity regarding Vail's ability to work. In response to a follow up question, the expert stated that, if a worker could frequently handle articles with both hands, that person could work as a mail sorter or office helper. (Tr. 59). However, the Vocational Expert did not reconcile this testimony with her earlier statement that left handed fingering impairments precluded all work. This was a puzzling omission since, under the Dictionary of Occupational Titles, both of these jobs required

---

[2] The ALJ posed this question to the VE in two forms, asking about the ability of a person to perform light work with these impairments, or work at all exertional levels. The VE stated that her opinions remained unchanged regardless of the exertional level of the work. (Tr. 58-60).

frequent fingering, something that the ALJ's hypothetical indicated Vail could not do with his left hand. Moreover, when invited to try to reconcile these seemingly irreconcilable averments with the Dictionary of Occupational Titles, the following enigmatic exchange took place between the ALJ and VE:

> Q.    Are there any other variations to the DOT in the Hypotheticals . . . I haven't listed?
>
> A.    There are manipulative functions between fingering and handling the nondominant and dominant upper extremities as were distinguished in the DOT.
>
> Q.    Okay, they're spoken of glibly as well? They lump them altogether?
>
> A.    Yes, your Honor. Yes, your Honor.

(Tr. 61).

On this completely enigmatic note, the Vocational Expert's testimony concluded.

Following his hearing, on January 30, 2024, the ALJ entered a decision denying Vail's application for benefits. (Tr. 14-36). In that decision, the ALJ first concluded that the plaintiff met the insured requirements of the Act through June 2022, and had not engaged in substantial gainful activity since June 1, 2021, the alleged onset date. (Tr. 21). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Vail had the following severe impairments: status

7

post remote left hand first to third digit amputations; post-traumatic stress disorder (PTSD); social anxiety disorder; anxiety disorder; depressive disorder; and a mood disorder. (Id.) At Step 3, the ALJ determined that Vail did not have an impairment or combination of impairments that met or medically equaled the severity of one of the disability listing impairments. (Tr. 24-28).

Having made these findings, between Steps 3 and 4, the ALJ then fashioned the following residual functional capacity ("RFC") for the plaintiff:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following limitations: No more than occasional climbing of stairs and ramps, but no climbing of ladders, ropes, or scaffolds. *Further he is limited to frequent handling with the left nondominant hand, and occasional left nondominant fingering, with no limitations to the right dominant hand for handling or fingering.* Also he must avoid concentrated levels of temperature extremes, humidity and hazards, defined as heights. Further he is limited to unskilled work activity as defined in the Dictionary of Occupational Titles (DOT), which is limited to simple routine repetitive tasks, that is low stress, defined as only occasional decision making required and only occasional changes in the work setting, with no interaction with the public.

(Tr. 28) (emphasis added). Thus, this RFC embraced a limitation to occasional left nondominant fingering, a limitation that the VE seemed to testify precluded any employment. The ALJ then found that, while Vail could not return to his prior work, he could perform the jobs of mail sorter and office helper. (Tr. 36). In reaching this

8

conclusion the ALJ neglected to mention that both of these jobs required frequent fingering according to the Dictionary of Occupational Titles. This anomaly remained unacknowledged and unaddressed in the ALJ's decision.

The ALJ found at Step 5 that there were other jobs that existed in significant numbers in the national economy which Vail could perform and denied this claim. (Tr. 36). This appeal followed. (Doc. 1). On appeal, Vail argues, *inter alia*, that the ALJ failed to account for meaningful ambiguities and inconsistencies in the testimony of the vocational expert with regard to the occupations an individual with Vail's RFC could perform.

We agree. Accordingly, we will remand this case for further consideration by the Commissioner.

## III.    Discussion

### A. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ.

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); see also 20 C.F.R. §404.1505(a). To satisfy this requirement, a claimant must have a severe

physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §404.1520(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1). In making this assessment, the ALJ considers all of

10

the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §404.1545(a)(2).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-07. In addition, "[t]he ALJ must indicate in his

decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999).

**B. The Role of the Vocational Expert and Dictionary of Occupational Titles in Disability Analysis.**

Oftentimes, as in this case, an ALJ turns to the testimony of a vocational expert based upon data drawn from the Dictionary of Occupational Titles to carry the Commissioner's burden at Step 5 to show that jobs exist in significant number in the national economy that the claimant can perform consistent her age, education, work experience and RFC. In this setting:

> Testimony of vocational experts in disability determination proceedings typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert. The ALJ will normally ask the expert whether, given certain assumptions about the claimant's physical capability, the claimant can perform certain types of jobs, and the extent to which such jobs exist in the national economy.

Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005). When opining on this question, the vocational expert, in turn, "will generally consult the Dictionary of Occupational Titles (DOT), a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy, in order to determine whether any jobs exist that a claimant can perform." Burns v. Barnhart, 312 F.3d 113, 119 (3d Cir. 2002).

The evidentiary value of this vocational expert testimony and reliance upon the Dictionary of Occupational Titles to carry the Commissioner's Step 5 burden of proof is directly a function of how accurately that testimony reflects economic reality. Recognizing this fact, the Dictionary of Occupational Titles catalogues a compendium of job titles, describing the responsibilities of myriad tasks, and assessing the physical, exertional, learning and language requirements for each of these jobs. And the purpose of the hypothetical questioning of the vocational expert is to reconcile the limitations in a claimant's RFC with the requirements of the jobs as described by the DOT. On this score, "vocational expert testimony may provide substantial evidence to support an ALJ's findings at Step 5." Evans v. Kijakazi, No. 1:21-CV-00554, 2023 WL 2761125, at *8 (M.D. Pa. Apr. 3, 2023) (citing Zirnsak, 777 F.3d at 616) ("The Commissioner can also rely on testimony from a VE to meet its step-five evidentiary burden"). But "[a] vocational expert's testimony is not substantial evidence if the ALJ did not include in the hypothetical to the vocational expert all the claimant's credibly established impairments," McMahon v. Kijakazi, No. 1:20-CV-01320, 2022 WL 801505, at *4 (M.D. Pa. Mar. 15, 2022), and "[w]hile the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately

portrays the claimant's individual physical and mental impairments." <u>Podedworny v. Harris</u>, 745 F.2d 210, 218 (3d Cir. 1984).

Moreover, it is also well-settled that an ALJ may not allow inconsistencies between a claimant's actual skills, a vocational expert's testimony, and the criteria set forth in the Dictionary of Occupational Titles to go unaddressed and unresolved. Thus, the Third Circuit has long held that:

> To ensure consistency, courts have imposed an obligation on ALJs to "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs ... and information in the [DOT]." <u>Id</u>. at *1; <u>Rutherford</u>, 399 F.3d at 556. Specifically, an ALJ is required to (1) ask, on the record, whether the VE's testimony is consistent with the DOT, (2) "elicit a reasonable explanation" where an inconsistency does appear, and (3) explain in its decision "how the conflict was resolved." <u>Burns v. Barnhart</u>, 312 F.3d 113, 127 (3d Cir.2002). An ALJ's failure to comply with these requirements may warrant remand in a particular case. <u>Rutherford</u>, 399 F.3d at 557.

<u>Zirnsak</u>, 777 F.3d at 617. Similarly, a remand is necessary if there are material ambiguities in the Vocational Expert's testimony that are not adequately addressed and resolved by the ALJ. <u>Smith v. Astrue</u>, 961 F. Supp. 2d 620, 658 (D. Del. 2013); <u>Williams v. Barnhart</u>, 424 F. Supp. 2d 796, 802 (E.D. Pa. 2006).

## C. <u>Substantial Evidence Review – the Role of this Court.</u>

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the

14

findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has recently underscored for us the limited scope of our review in this field, noting that:

The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v.

Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

This principle applies with particular force to ALJ decisions, like the ruling in this case, which rest upon unresolved inconsistencies between a vocational expert's testimony and the skill requirements prescribed by the Dictionary of Occupational Titles. When such inconsistencies exist, it is incumbent upon the ALJ to: (1) identify the inconsistency; (2) address the inconsistency with the vocational expert; and (3) resolve the inconsistency in the ALJ's decision. The failure to do so often compels a remand. Zirnsak, 777 F.3d at 617.

**D.    This Case Will Be Remanded for Further Consideration of the Inconsistencies and Ambiguities in the Vocational Expert's Testimony.**

As we have noted, the ALJ's decision in this case rests upon both ambiguities regarding precisely which occupations the vocational expert testified the plaintiff can perform despite his impairments and inconsistencies between the identified occupations, the RFC fashioned by the ALJ, and the Dictionary of Occupational Titles. Since the ALJ failed to address and resolve these material ambiguities and

18

inconsistencies, the ALJ's reliance upon the VE's inherently ambiguous testimony is not supported by substantial evidence in this case.

In this regard we are presented with a stubborn, but immutable fact. When the Vocational Expert was asked if someone whose impairments matched Vail's could perform light work that was limited to occasional left-hand fingering, the VE said no and explained that "the reason for that is because of the occasional fingering with the nondominant left upper extremity." (Tr. 59).

The Vocational Expert's subsequent testimony then simply compounded the confusion and uncertainty regarding this important issue. For example, the fact that the VE stated that the jobs of mail sorter and office helper could be performed by someone who could engage in frequent bilateral *handling*, sheds no light on the extent to which Vail's limitations on *fingering* with his left hand precludes employment. Instead, this testimony seems to conflate fingering and handling. Yet, it is clear that Social Security rulings distinguish between these functions and note that restrictions on fingering can be particularly important in cases involving workers like Vail who are limited to light work. As the Commissioner has explained:

> *Reaching, handling, fingering, and feeling* require progressively finer usage of the upper extremities to perform work-related activities. Reaching (extending the hands and arms in any direction) and handling (seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands) are activities required in almost all jobs.

Significant limitations of reaching or handling, therefore, may eliminate a large number of occupations a person could otherwise do. Varying degrees of limitations would have different effects, and the assistance of a VS may be needed to determine the effects of the limitations. "Fingering" involves picking, pinching, or otherwise working primarily with the fingers. It is needed to perform most unskilled sedentary jobs and to perform certain skilled and semiskilled jobs at all levels of exertion. As a general rule, limitations of fine manual dexterity have greater adjudicative significance--in terms of relative numbers of jobs in which the function is required--as the person's exertional RFC decreases. Thus, loss of fine manual dexterity narrows the sedentary and light ranges of work much more than it does the medium, heavy, and very heavy ranges of work.

Titles II & XVI: Capability to Do Other Work-The Medical-Vocational Rules As A Framework for Evaluating Solely Nonexertional Impairments, SSR 85-15 1985 WL 56857 at 7 (S.S.A. 1985). Accordingly, the VE's failure to directly address these distinctions between fingering and handling was error, and prejudicial error in this case given the otherwise restrictive light work RFC fashioned by the ALJ.

The VE's selection of representative jobs that Vail could perform further highlighted these ambiguities and inconsistencies. In this decision, the ALJ relied upon the Vocational Expert's testimony to conclude that Vail could work as a mail sorter and office helper. (Tr. 36). Yet, the definition of these jobs in the Dictionary of Occupational Titles stated that both jobs required frequent fingering, something that ALJ recognized was not possible given Vail's left finger amputations. See

20

209.687-026 Mail Clerk, DICOT 209.687-026, 1995 WL 671813; 239.567-010 Office Helper, DICOT 239.567-010, 1995 WL 672232.

For its part, the Commissioner contends that these cascading uncertainties were remedied by the following exchange between the ALJ and VE:

> Q.    Are there any other variations to the DOT in the Hypotheticals . . . I haven't listed?

> A.    There are manipulative functions between fingering and handling the nondominant and dominant upper extremities  as were distinguished in the DOT.

> Q.    Okay, they're spoken of glibly as well? They lump them altogether?

> A.    Yes, your Honor. Yes, your Honor.

(Tr. 61).

We disagree. In candor, we cannot discern what the VE meant by this testimony and are unsure what the ALJ intended to convey when she stated that fingering and handling are spoken of glibly and lumped together. In any event, it is evident that these manipulative functions are not properly lumped together but rather must be independently evaluated and assessed since they can significantly erode the ability of a claimant to perform light or sedentary work. Here, to the extent that this separate analysis took place, the VE testified that a limitation to occasional left

21

handed fingering prevented employment stating, "the reason for that is because of the occasional fingering with the nondominant left upper extremity." (Tr. 59).

Thus, we are presented with an administrative record that discloses a cascading array of unresolved conflicts between a vocational expert's testimony and the ALJ's findings, which is unexplained and unacknowledged by either the expert or the ALJ. <u>Boone</u>, 353 F.3d at 209; <u>Minichino</u>, 955 F.Supp.2d at 380. Further, in this case there are material ambiguities in the Vocational Expert's testimony that are not adequately addressed and resolved by the ALJ. <u>Smith</u>, 961 F.Supp.2d at 658; <u>Williams</u>, 424 F.Supp.2d at 802. These factors strongly suggest the need for further consideration and clarification regarding how the fingering limitations incorporated into Vail's RFC may erode his employment prospects.

Simply put, more is needed here. It is axiomatic that the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." <u>Cotter</u>, 642 F.2d at 704. This means that there must be a logical nexus between the ALJ's factual findings and legal conclusion. That logical bridge is missing here. On the current record, where the hypothetical questioning of the Vocational Expert by the ALJ was inconsistent with the DOT, was fatally ambiguous and suggested that Vail's left hand fingering impairments precluded all work, the ALJ's burden of

articulation is not met. Therefore, this matter will be remanded for further consideration by the Commissioner.

Yet, while we reach this result, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Rather, this task should remain the duty and province of the ALJ on remand. Further, having found that a remand is justified on these grounds, we have not addressed any other claimed errors because the ALJ may in the first instance address them upon remand. See McMillan v. Comm'r of Soc. Sec., No. 16-313, 2018 WL 6617841, at *4 (D.N.J. Dec. 18, 2018) (holding the same in finding that a remand was appropriate because the ALJ failed to properly consider the plaintiff's severe obesity impairment at the third step and the fifth step, and thus the Court "need not consider Plaintiff's other arguments at this juncture"); see also Lawrence v. Colvin, No. 15-2851, 2016 WL 1644622, at *10 (D.N.J. Apr. 26, 2016) (holding the same in finding that a remand was appropriate because the ALJ failed to properly consider one of the claimant's disabilities, and thus the ALJ would be required to engage in an entirely new evaluation concerning the claimant's other alleged severe disabilities).

An appropriate order follows.

_S/ Martin C. Carlson_
Martin C. Carlson
United States Magistrate Judge

DATED:    May 6, 2025